JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, ex provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Carol L. Lloyd

## DEFENDANTS

New Jersey Housing and Mortgage Finance Agency, and Cenlar FSB d/b/a Central Loan Administration & Reporting

**(b)** County of Residence of First Listed Plaintiff    CAMDEN
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    MERCER
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Carol L. Lloyd, 60 Coachlight Dr, Sicklerville NJ 08081
(609) 619-0611, ms.carol.lloyd@gmail.com - Pro Se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3   Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportion |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banki |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influer Corrupt Organiza |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commo Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory A |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Ma |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Infor Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Pr Act/Review or Ap |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidi Litigati Direct F

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1331

Brief description of cause:
Violations of Plaintiff's Rights Pursuant to Fed Regulations, 5th & 14th Amendments, 42 USC 1983

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
15,000.00

CHECK YES only if demanded in compla
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
10/03/2017

SIGNATURE OF ATTORNEY OF RECORD
*Pro se*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

Carol Lloyd
60 Coachlight Dr
Sicklerville, NJ 08081
Defendant, Pro Se
Telephone: (609) 619-0611
E-mail: ms.carol.lloyd@gmail.com



## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROL L. LLOYD | CIVIL ACTION NO. 3:17-cv-05369 |
| Plaintiff, | FIRST AMENDED COMPLAINT |
| vs. | |
| NEW JERSEY HOUSING & MORTGAGE FINANCE AGENCY, | FEDERAL QUESTION Foreclosure-Related 28 U.S.C. § 1331 |
| and | National Housing Act 12 U.S.C. §§ 1701 et. seq |
| Anthony L. Marchetta, in his Official Capacity as Executive Director, NEW JERSEY HOUSING & MORTGAGE FINANCE AGENCY, | 42 U.S.C. § 1983; FIFTH & FOURTEENTH AMENDMENT, |
| and | 12 CFR 1024.41 18 U.S.C. § 371 |
| CENLAR FEDERAL SAVINGS BANK (FSB) d/b/a Central Loan Administration and Reporting | Jury Trial Demanded |
| Defendants | |

## JURISDICTION AND VENUE

1. This is an action primarily for prospective injunctive relief pursuant to 42 U.S.C. § 1983 based upon the continuing violations of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and ongoing violations of Plaintiffs rights pursuant to federal regulations governing the Federal Housing Administration ("FHA") program under the National Housing Act, 12 U.S.C. §§ 1701 et. seq. Jurisdiction also exists pursuant to 28 U.S.C. § 1331, 28 U.S.C. 1343 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

2. Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367.

3. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) since all parties are domiciled or residents of New Jersey and acts complained of herein took place in the District.

4. Under Section 1983, Plaintiff will request the court issue an injunction to stay the state court proceedings pursuant to 28 U.S.C. 2283 since such injunction would be necessary to aid in the federal court's jurisdiction over a res, and to effectuate a federal court judgment. Such relief would also be authorized by Congress since Plaintiff's federal right and remedy, enforceable in the federal court, would be frustrated if the federal court were not empowered to enjoin the state court proceedings.

## PARTIES

5. Carol L. Lloyd, Plaintiff, is a 62- year old person, born in the United States and a citizen thereof, subject to the jurisdiction thereof and the jurisdiction of the State of New Jersey where Plaintiff resides.

6. Plaintiff is the resident owner of the real property at issue at 60 Coachlight Dr, Sicklerville NJ 08081 where she has resided continuously since March 1996 when the Property was purchased by her.

7. New Jersey Housing and Mortgage Finance Agency (hereinafter "HMFA", "Agency", or "Defendant") is located at 637 South Clinton Ave, Trenton, NJ 08611.

8. HMFA, the lender/mortgagee, is established under, but is not a part of, the New Jersey Department of Community Affairs and is constituted as a body politic and corporate body and an instrumentality of the state, exercising public and essential governmental functions. HMFA benefits via long-term tax exemptions from the state pursuant to N.J.A.C. 5:13-1.1 and other statutes. HMFA works (and has worked) in concert with the state of New Jersey and parameters of the Federal Housing Administration ("FHA") program to provide affordable housing to New Jersey residents.

9. HMFA participates in contracts with the state.

10. The actions of HMFA are "pervasively entwined" with the state of New Jersey and the Department of Housing and Urban Development ("HUD") in its efforts to provide housing for low income residents via numerous grant programs.

11. Per HMFA's Mission Statement, HMFA **DOES** rely on progressive federal and state housing legislation to contribute to the vitality of the state's economy and the quality of life of its residents.

12. HMFA is also recognized as a State Housing Agency created under the New Jersey Housing and Mortgage Finance Agency Law of 1983, codified at N.J.S.A. §§ 55:14k-1 et seq.

13. On HMFA's internet site, it says the following:

The People We Serve:

The New Jersey Housing and Mortgage Finance Agency (HMFA) provides funding for affordable home ownership and housing opportunities for New Jersey residents.

Our Expertise:

HMFA responds to the needs of its residents by implementing creative programs and establishing alliances that:

- fund affordable home mortgages for first-time home buyers;
- promote construction and rehabilitation of rental housing;
- encourage mixed-income, owner-occupied housing growth as a means to stabilize urban neighborhoods;
- advance the growth and development of municipalities;
- contribute to the quality of life of older adults, the disabled and those with special housing needs; and
- formulate partnerships to foster the economic development of New Jersey and the personal development of its residents.

14. However, despite all these alleged housing goals, in the finale, upon an alleged default by a borrower on one of its FHA loans, HMFA, and its agent, ignore the regulations that gave it the ability to initially originate the loans, and attempts to seize the homes of these same citizens by being deceptive to both the

FHA and the Plaintiff in order to file and collect on claims to the same government agency, HUD, that funds its many programs. Such claims when paid result in unjust enrichment of mortgagees like HMFA at the expense of both homeowners such as the Plaintiff and the federal government.

15.  Anthony L. Marchetta is a person and serves in his official capacity as Executive Director at HMFA. As the administrative head of HMFA, Marchetta is charged with the responsibility for carrying out its policies and representing the agency in its dealings with the federal and state governments. Both governments impose duties upon the Director to comply with a multitude of policies, programs, and requirements. A state official violates federal law by continuing work and activity on a major program such as the FHA when the requirements of the program have been willfully violated, perhaps in the extreme across countless homeowners. In coordination with staff, Marchetta is responsible for the servicing and management of the FHA program for all housing.

16.  CENLAR FSB (hereinafter "CENLAR" or "Defendant") is located at 7 Graphics Drive, Ewing, NJ 08628. CENLAR is the servicer and authorized agent for HMFA. CENLAR is also a federally chartered savings bank providing mortgage loan servicing and subservicing in the United States and its territories. As a federal savings bank, HMFA is an agency of the United States created to promote its fiscal policies. CENLAR also has the same benefits and is no less an instrumentality of the federal government than national banks whose purpose is to also promote fiscal policies of the federal government.

17. Defendants may be referred to herein by name, or Defendant, or Defendants encompassing all.

18. Plaintiff reserves the right to add parties to the complaint.

19. Plaintiff reserves the right to amend this Complaint to add a Cause of Action pursuant to 42 U.S.C. 1983 on behalf of "a class of persons comprised of all past and present HMFA mortgagors who have lost or will lose their homes after HMFA's violation of their rights via its failure to comply with the conditions precedent pursuant to 24 CFR 203.604" and will request that this Court certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

20. The claims herein all arise under a federal mortgage program, the Federal Housing Administration ("FHA").

21. Plaintiff has a FHA mortgage loan, guaranteed and insured by the federal government via the federal agency, the Department of Housing and Urban Development, ("HUD").

22. As her primary Cause of Action, pursuant to 42 U.S.C. 1983, Plaintiff complains of an ongoing violation of her federal rights by Plaintiff Marchetta pursuant to 24 CFR 203.604, acting under color of state foreclosure statutes, in continuing to authorize foreclosure on her government-insured FHA mortgage loan where no right ever accrued to accelerate or foreclose on her loan and

where HMFA has admitted to not having met the conditions precedent to foreclose but still wants to collect on a claim from the federal government.

23. There is a current foreclosure action pending in the state court that was dismissed when this Complaint was originally filed. The state foreclosure complaint was twice filed (2010 and 2013) despite the fact that HMFA had acquired no federal right to ever file a complaint and in violation of Plaintiff's rights under the program regulations.

24. Still with no federal right having accrued to foreclose, HMFA, in late July 2017, motioned to the state court to reinstate the state case. Over the homeowner's objection, it was reinstated.

25. In its motion to reinstate the foreclosure action, clearly HMFA has continued in its dogged determination to seize Plaintiff's home without federal right and in violation of Plaintiff's rights.

26. Plaintiff was initially moved to file an action in the federal court after the New Jersey state court indicated it could not and would not take notice and apply Plaintiff's federal conditions precedent defenses to the state foreclosure action because applying the federal law and regulations would not be fair to HMFA, the mortgagee. (Summary judgment oral argument in the state foreclosure action on June 26, 2015.) This is despite the fact that the federal regulations take a position of supremacy over the state statutes, and HMFA has falsely certified compliance with these same regulations to HUD.

27.  The state court by its own statement at oral argument mentioned above, has shown the state court is not an adequate forum to review Plaintiffs' federal claims.  In fact, it refuses to be.  Therefore, clearly, the state court is not capable of protecting the interests of Plaintiff, nor protecting the interests of a federal program as critical as the FHA.  Plaintiffs' rights and claims will not be vindicated in the state foreclosure action.  Nor will the state court protect the rights of the parties if the Section 1983 claim is heard in the state court.

28.  And upon information and belief, the state process is structured such that Plaintiff will lose her home before having any opportunity to be heard in the appellate court.  There is also no reason to believe the appellate court won't have the same partial stance toward the lender as did the state court.

29.  There is a serious issue of embedded federal law in 24 CFR 203.604 that all on its own determines whether Defendants have any right to even initiate a state law claim in foreclosure against Plaintiff.

30.  Without first determining the federal right and examining Plaintiff's rights, there is no state law claim.

31.  Federal regulations first establish the "right" to foreclose.  State statutes (the Fair Foreclosure Act "FFA"), N.J.S.A. 2A:50-53 to 68,  primarily deal with issues of notice, not "rights."

32.  Pursuant to Plaintiff's Mortgage at paragraph 14, Governing Law; Severability, the document states: "This Security Instrument shall be governed by

Federal law and the law of the jurisdiction in which the Property is located." (See Exhibit A.)

33. The state court ignored Federal law.

34. New Jersey no doubt wants its low and middle income residents to have the same assistance from HUD as residents of other states to make it possible to buy homes and build communities that otherwise would not happen. As of July 31, 2017, there were over 215,000 active FHA loans in the state of New Jersey (per HUD Neighborhood Watch). These loans amount to billions in volume on the books of HUD and insured by the agency. HUD can't possibly know that the state of New Jersey aims to betray the FHA program by nulling its regulations at foreclosure in order to insure the lenders win foreclosure cases and thus leave HUD and the taxpayers on the hook for claims. This would be an enormous additional burden on HUD, especially relative to other states. HUD should question whether it should insure loans in New Jersey if the state court acts to usurp the program to favor lenders who have intentionally deceived the FHA program. Ignoring law and regulation can have monumental consequences. The State of New Jersey must be cognizant of being the only state, to Plaintiff's knowledge, setting such a precedent to both betray the homeowners and betray the federal government via the nulling of federal regulations and homeowner rights.

## Immunity

35. HMFA agency officials do not have immunity under the Eleventh Amendment since an exception exists for official capacity suits seeking prospective relief to ensure the officials' compliance with federal law. (Ex parte Young.)

36. HMFA, as a state agency, has also waived immunity across the entire agency for all purposes pursuant to Section 504 of the Rehabilitation Act of 1973 due to its receipt of millions in funds from the federal government that encourages and allows HMFA to provide housing for low/middle income New Jersey families resulting in extensive federal control and entwinement. (Section 221 of the National Housing Act (12 U.S.C. 17151.)

## HMFA is a State Actor

37. For purposes of the Causes of Action herein, HMFA acted under color of state law.

38. HMFA's state involvement with the State of New Jersey (noted above) would be considered a symbiotic relationship with the state government.

39. HMFA has so far insinuated itself into a position of interdependence with the State of New Jersey that it must be recognized as a joint participant in the challenged activity herein.

40. Further, HMFA's significant relationship with the federal government (via HUD) is one of such entwinement and regulation as to bring

HMFA's actions within the scope of the Fifth Amendment as it applies to the federal government.

41.  Both the state and federal governments have elected to place their property, power, and finances behind HMFA and have insinuated themselves into a position of interdependence with the agency.  (N.J.A.C.5:13-1.1).

42.  HMFA even receives funds from HUD for housing counseling, allegedly a front line for providing the full spectrum of services households need – from locating affordable rental housing, offering advice on how to become a homeowner, and preventing foreclosure.  Ironic.

43.  Beyond the relationship of HMFA with the state and federal governments in the form of programs and regulations, the fact that HMFA in effect performs a government function by helping to implement HUD's congressional policy of helping low and middle income citizens buy homes and keep their homes, makes its actions subject to constitutional limitations.

44.  Related to the fact that HMFA is helping to implement congressional housing policy is the fact that HMFA has the power to wrongly deprive citizens of these same homes, as in the case before us.

45.  There is "state action" for purposes of the due process clause of the Fourteenth Amendment.

46.  There is federal involvement sufficient to subject HMFA to the Fifth Amendment.

47.  The facts also satisfy the "under color of" clause of 42 U.S.C. 1983.

48.   Jurisdiction is also satisfied under 28 U.S.C. 1343(3).

## Overview of the FHA

49.   The indebtedness secured by the Mortgage is insured by the FHA under regulations promulgated by HUD under the National Housing Act ("NHA"), 12 U.S.C. §§ 1701 et. seq., and codified as law in Part 203 of Title 24 of the Code of Federal Regulations ("CFR") and frequently updated via publication of HUD Mortgagee Letters.

50.   With FHA, lenders have a risk-free loan and needn't worry about default losses since the loan is insured against default by the federal government.

51.   HUD fully contemplates that FHA losses will exceed the losses in conventional mortgage programs like Fannie Mae and Freddie Mac.

52.   HUD, not the state, has a tremendous vested interest in controlling losses in the mortgage insurance program, both for the program and the homeowner.  HUD, therefore, promulgated specific federal regulations that dictate the conditions precedent for acceleration and foreclosure of a FHA loan.

53.   In exchange for these risk-free loans, HUD mandates that lenders such as HMFA take specific, early, proactive steps to prevent foreclosure to (a) help mortgagors keep their homes, and (b) avoid claims to HUD.

54.   Both CENLAR and HMFA made the willful decision to violate one of these statutory requirements at 24 CFR 203.604 and proceed with foreclosure.

55. HMFA has twice filed foreclosure complaints in the state court while willfully and knowingly violating these federal conditions precedent. At the same time, the state court ignored, nulled and voided the federal regulations to favor the Defendant HMFA.

56. Via its actions in the state foreclosure cases, both HMFA and CENLAR have clearly indicated they care nothing about HUD regulations that govern its right to foreclose and thus have steamrolled ahead in a conspiratorial nature with reckless abandon and indignation for the federal regulations for which Defendants have certified compliance to HUD.

### The New Jersey Fair Foreclosure Act, "FFA"
### N.J.S.A. 2A:50-53 to 68

57. The New Jersey State foreclosure statutes at NJ Rev Stat § 2A:50-56 (2016) titled, "The New Jersey "FAIR" Foreclosure Act", were legislated primarily to alert mortgagees as to what their "state" obligations are prior to accelerating and foreclosing on a New Jersey mortgage loan that fall under the parameters of the Act. In part, it states:

> "*Upon failure to perform any obligation of a residential mortgage by the residential mortgage debtor and before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation and commence any foreclosure or other legal action to take possession of the residential property which is the subject of the mortgage, the residential mortgage lender shall give the residential mortgage debtor notice of such intention at least 30 days in advance of such action as provided in this section.*"

58. However, the FFA ) is no more than a "NOTICE" statute and fails to alert the mortgagee that (in most cases) the right to accelerate and foreclose will NOT accrue based solely on the "state NOTICE requirements" in this paragraph.

59. In the case of the FHA loan under HUD, the requirements stated in the FFA fail to give foreclosing lenders the warning that FHA loans have federal statutory conditions precedent to acceleration and foreclosure that must be met. i.e., the federal regulations at 24 CFR 203.604(b)-(d), the face-to-face meeting, that are in addition to the simple procedural notice requirements. In fact, the federal requirements for acceleration and foreclosure of a FHA loan MUST necessarily precede the state requirements.

60. The state of New Jersey retains substantial leeway to establish the contours of its judicial systems, but lack authority to nullify a federal right, defense, or cause of action it believes is inconsistent with its local goals and policies or personal whims of the court. This would not be due process.

61. Enforcement of New Jersey state foreclosure law to the exclusion of federal law affecting foreclosures frustrates the federal purpose inherent in the National Housing Act ("NHA"), 12 U.S.C. §§ 1701 et. seq., and codified as law in Part 203 of Title 24 of the Code of Federal Regulations.

62. The question of federal law is substantial as it directly determines whether HMFA and/or CENLAR, its agent, had any right to accelerate and foreclose and whether Defendants have any legal right to continue in its attempt to take

Plaintiff's home where such right never accrued. And it also determines if HMFA violated Plaintiff's rights.

63. When New Jersey nullifies federal regulation in FHA foreclosures, the state exposes the federal government to untold millions of dollars in false claims in the state of New Jersey. State exposure to financial loss from illegal foreclosures is miniscule compared to the severe magnitude of federal losses.

64. HMFA maintains that all its agency loans are subject to oversight and consent from the Agency's servicing staff before any loan workout or foreclosure can be commenced. HMFA has Marchetta as Executive Director on staff as the ultimate authority. And allegedly, HMFA employs a Servicing Manager and a staff of five servicing officers, along with an Assistant Division Director. Yet with all this alleged staff and oversight, the HUD pre-foreclosure requirements are still ignored. This evasion of law and regulation must be planned and intentional.

65. Nothing in the HMFA Servicing Guide even mentions the federal requirements at 24 CFR 203.604.

### Facts of the Case

66. On March 25, 1996, Plaintiff obtained a Federal Housing Administration ("FHA") loan to buy the property at issue herein secured by a mortgage on said property.

67. HMFA is approved by HUD as a mortgagee.

68. CENLAR is approved by HUD as a subservicer.

69. When the loan was originated, both Eastern Mortgage (a HMFA seller), and later HMFA, agreed to abide by the federal requirements of the FHA/HUD mortgage program in servicing Plaintiff's mortgage, especially in the event of a foreclosure.

70. Plaintiff became delinquent with her mortgage payments near the end of 2009. It was at this time that a meeting should have first been held or attempted with Plaintiff pursuant to 24 CFR 203.604.

71. HMFA admitted it never made such an attempt and never held a meeting.

72. In 2009, Plaintiff engaged in a payment plan to bring her loan current that eventually failed since the payments required were higher than her regular payment. It was at this time that a pre-foreclosure meeting should have been held or attempted with Plaintiff pursuant to 24 CFR 203.604. HMFA admitted it never made such an attempt and never held a meeting.

73. In early 2010, Defendant engaged in another payment plan to bring her loan current that once again failed since the payments required were higher than her regular payment. It was at this time that a pre-foreclosure meeting should have been held or attempted with Plaintiff pursuant to 24 CFR 203.604. HMFA admitted it never made such an attempt and never held a meeting.

74. In late 2009 and early 2010, Plaintiff began receiving NOIs (Notice of Intention to Foreclose) from CENLAR with differing "fees" required to bring her loan current. These fees were simply titled "other" and sometimes the amount

indicated was over $1,000. Plaintiff desperately attempted to contact CENLAR via phone, mail, even Certified Mail, to determine what these fees were for. She alerted CENLAR that without these fees, she had the funds to bring her loan current. CENLAR ignored her. And for 2 years, Plaintiff was unable to get anyone at CENLAR to address the issue. Everyone claimed they had no answer. Meanwhile, CENLAR was requiring the money be paid. Finally, after 2 years and countless certified letters and Qualified Written Requests, CENLAR relented and removed the fees after admitting (via its own internal correspondence) it had NO LEGAL RIGHT to add the fees to Plaintiff's account.

75. So, despite a threat to foreclose by holding Plaintiff hostage to pay fees she never owed plus never having acquired any right to accelerate and foreclose pursuant to 24 CFR 203.604, this didn't stop CENLAR from filing a foreclosure complaint in July 2010.

76. Plaintiff filed a motion to dismiss the 2010 complaint. It was later dismissed due to failure of CENLAR to comply with the requirements of the FFA.

77. Several times, CENLAR then disingenuously engaged with Plaintiff in attempts to modify her loan. Plaintiff met with discombobulation, disorganization, and intentional chaos and delay each time she tried to apply for a loan modification.

78. Since 24 CFR 203.604 mandates that a meeting be held with a representative of the lender with "the authority to propose and accept reasonable

repayment plans," Plaintiff might have stood a chance at obtaining a loan mod since the representatives she had been speaking with had no idea what was going on.

79.  The required face-to-face meeting prior to the 62nd day of delinquency would have resolved so many problems since not only must the person assigned to do the face-to-face meeting be a knowledgeable representative with appropriate authority, it's also possible Plaintiff could have resolved the major issue of CENLAR holding Plaintiff hostage to pay illegal fees of over $1000 to reinstate her mortgage.  HUD is fully aware that the time factor is very critical.  Plaintiff forever lost that opportunity since there will never be another "*62nd day of delinquency.*"

80.  In early 2013, HUD made the requirements less stringent for a loan modification and required all FHA mortgagees to reassess all defaulted homeowners for a loan mod under the new rules prior to filing a foreclosure action.

81.  CENLAR ignored this modified program requirement and filed another foreclosure complaint in July 2013.

82.  As to the regulations at 24 CFR 203.604, during the discovery process for the 2013 complaint, Defendant HMFA, via its servicer, CENLAR, admitted the following via Admissions dated March 3, 2015:

- the face-to-face meeting was not held
- HMFA failed to satisfy the conditions precedent at 24 CFR 203.604 prior to filing the foreclosure complaint
- neither HMFA nor CENLAR attempted to schedule a meeting with Plaintiff before filing the foreclosure complaint
- neither HMFA nor CENLAR mailed a letter to Plaintiff to attempt to schedule a meeting prior to filing the foreclosure complaint

- both HMFA and CENLAR have an office within 200 miles of Plaintiff's property
- HMFA was never presented with any information that Plaintiff was not occupying the property
- Lloyd never indicated she would not agree to a face-to-face meeting

83. At summary judgment oral argument on June 26, 2016, the court said it could not and would not consider Plaintiff's 24 CFR 203.604 valid defense to foreclosure because it would not be fair to the lender – exhibiting a clear bias and partiality for one of the parties. Summary judgment was granted over Plaintiff's vehement opposition. Her motion for reconsideration was likewise denied as Plaintiff fully expected.

84. CENLAR then pretended to want to see if Plaintiff qualified for a loan modification. Plaintiff then applied at the behest of CENLAR and its counsel.

85. Per the two Causes of Action below, CENLAR then failed to properly respond to Plaintiff's applications.

86. The state foreclosure complaint was then allowed to languish with no activity for over one year and was dismissed by the court.

87. Upon the dismissal, defendant had the opportunity to not continue with the regulatory violation and violation of Plaintiff's rights. But Defendant chose to motion to reinstate the state complaint over Plaintiff's objection once again where pursuant to 24 CFR 203.604, no right to acceleration and foreclosure had ever accrued.

88. HUD intended that the remedy for a failure to comply with the regulatory conditions precedent would be the inability of the mortgagee to foreclose.

## AGENCY AND RESPONDEAT SUPERIOR

89.  With the exception of any Section 1983 claims and redress, when, in this pleading, it is alleged that HMFA, did, or failed to do any act, thing and/or omission, it is meant that HMFA itself or its agents, officers, servants, employees, vice principals, or representatives either did or failed to do such act, thing and/or omission, and it was done with the full authorization or ratification of HMFA, and/or done in the normal routine, course and scope of the agency or employment of HMFA or its agents, officers, servants, employees, vice principals, or representatives and/or with actual and/or apparent authority of HMFA, or such required act that was not done by HMFA or its agents, officers, servants, employees, vice principals, or representatives when HMFA knew it had a legal responsibility to perform the act.

### Plaintiff Has the Right to Bring a Private Action for Violation of Her Rights and Immunities Pursuant to 24 C.F.R. 203.604 and Has an Individual Right to Enforce Her Rights

90.  Plaintiff realleges and hereby incorporates by reference all the above allegations and other facts of this pleading as if set forth at length herein.

91.  Under the statutory scheme of the FHA, HUD's regulations clearly establish rights and are "laws" for purposes of § 1983 where Congress delegated authority to HUD to promulgate rules and regulations having the force of law to effect administration of the FHA program. (12 U.S. Code § 1715b).

92.  Valid regulations that have the force and effect of law are "laws" within the meaning of § 1983.

93.  24 CFR 203.604 establishes individual and specific legal rights and those rights are enforceable under § 1983.

94.  HUD regulations pursuant to the Housing Act prohibited the acceleration and foreclosure of Plaintiff's loan both in 2010 and 2013 due to HMFA's willful failure to comply with the conditions precedent at 24 CFR 203.604.

95.  Where no right ever accrued to file suit, the remedy for HMFA's failure to comply is dismissal of any complaint, as has been determined by courts across the country.

96.  During settlement of her loan in 1996, Plaintiff borrower signed a Compliance Agreement that stated: "The undersigned borrower(s) acknowledges that failure to comply with the obligations contained in the Agreement shall constitute default under the commitment, promissory note, or mortgage executed in connection with the mortgage loan and shall entitle the lender to the remedies available for default under said documents which have been executed by the borrower(s). (**See Exhibit** B).

97.  The executed Note and Mortgage gives HMFA "the right" to enforce the terms of the agreements.

98.  Similarly, since the executed Note and Mortgage are not unilateral, HMFA is similarly obligated to comply with its obligations incorporated in these same contracts.

99. The executed Note and Mortgage gives Plaintiff "the right" to enforce the terms of the agreements.

100. Plaintiff admits that as a general rule, mortgagors have no private right to enforce all the myriad of federal regulations governing the FHA program.

101. FHA borrowers do have the right to assert the FHA pre-foreclosure requirements as a defense to a foreclosure proceeding.

102. Concerning the issue of rights, however, HUD created an exception when it incorporated specific regulations in Plaintiff's Note and Mortgage that note "conditions precedent" to foreclosure.

103. Pre-foreclosure requirements incorporated in Plaintiff's Note and Mortgage as conditions precedent to foreclosure pursuant to the Housing Act and the federal regulations at 24 CFR 203.604 create a private right to enforce the regulations.

104. In the Federal Register, FR Vol. 54, No. 124, Thursday, June 29, 1989, page 27599 HUD commented about the regulations that require a lender to meet conditions precedent prior to foreclosure. (**See Exhibit** C.)

105. A commenter in the above-mentioned Federal Register was specifically concerned about foreclosure proceedings becoming exhaustive from a defensive standpoint for the lender if the lender was made to prove compliance with the pre-foreclosure requirements. HUD disagreed.

106. HUD noted that acceleration and foreclosure are not permitted by regulations when the regulations are incorporated in the mortgage documents.

107. HUD separately commented that there are some regulations not incorporated in the mortgage documents such as 24 CFR 203.606 which HUD expects the lender not to violate and believes such regulations could be raised as a defense to foreclosure.

108.   HUD's comments in the Federal Register make a clear distinction between the regulations (prohibiting accelerating and foreclosure) incorporated in the mortgage documents versus those that are not.

109.   Since HUD states that regulations NOT incorporated in the mortgage documents can be raised as defenses in a foreclosure action, there must then be some source of distinction between the regulations not referenced in the mortgage documents and those that are referenced.   If all regulations that reference pre-foreclosure requirements are defenses to foreclosure, then there would be no need for HUD to reference any of the regulations in the mortgage documents – unless the incorporated regulations can be used both defensively and in a private action.

110.   Logically and contractually, when HUD incorporated the regulations in the mortgage documents that prevent acceleration and foreclosure without approval of the Secretary, HUD conferred a private right to Plaintiff to enforce and protect her right to meet with the mortgagee prior to acceleration and foreclosure, provided no exception applied.

111.   Importantly, at no point does HUD state that the regulations incorporated in the mortgage documents do not constitute a private right to bring a

cause of action when violated. HUD could have easily so stated as it was ripe for

discussion.

112. These regulations are referenced in Paragraph 9(d) of Plaintiff's

Mortgage agreement, "*Regulations of HUD Secretary.*" It states:

> "*In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.*" (**See Exhibit A.**)

113. This same condition precedent is made a part of Plaintiff's

Note in section 6(B). This section states:

> "*If borrower defaults by failing to pay in full any monthly installment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest..... In many circumstances, regulations issued by the Secretary will limit Lender's right to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this NOTE, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.*" (**See Exhibit D.**)

114. As mentioned, one of the regulations that limit acceleration and

foreclosure when the lender does not satisfy the conditions precedent is 24 C.F.R.

203.604. It states:

> "*The mortgagee **must** have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the*

*mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee* **must** *have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced..."*

In addition, 24 C.F.R. § 203.604(d) states:

*"A reasonable effort to arrange a face-to-face meeting with the mortgagor* **shall** *consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting* **shall** *also include at least one trip to see the mortgagor at the mortgaged property..."* (**See Exhibit** E.)

115. The language in these paragraphs contain explicit 'right-or duty-creating language' using the terms "shall" and "must" and thus imputing the intent of Congress to create a contractual duty of Defendant to perform the mandated condition where no exception existed.

116. When the Note and Mortgage expressly state on its face that it "does not authorize acceleration or foreclosure if not permitted by" some external set of conditions identified within the contract, those conditions then are fully incorporated as conditions precedent.

117. Since HUD requires this language to be incorporated into the Note and Mortgage which secure its federally insured loans, (24 C.F.R § 203.17(a)), doing so makes these regulations enforceable by borrowers, be it defensively or offensively as would have to be the case in non-judicial foreclosure states.

118. To make the argument that these incorporated provisions solely represent and govern the relationship between the lender and the government,

rather than the lender and the borrower fails all logic and reason.  There is no reason to incorporate these regulations in the mortgage documents other than to affect the duties of the parties to it.  Otherwise, incorporating these regulations in the contracts would have no meaning or purpose whatsoever.  One can't argue this was the intent of HUD.  Terms and conditions that serve no purpose aren't added to contracts.

119.    Plaintiff is not attempting to enforce any agreement or relationship between HUD and HMFA.  Plaintiff is attempting to enforce her rights under the agreement between herself and HMFA.

120.    HUD's goal is to help homeowners avoid foreclosure and HUD realizes that by alerting homeowners to their rights under the contract, a foreclosure might be avoided.

121.    HUD has not modified the regulations, nor published anything in the Federal Register to say the regulations do not represent conditions precedent, nor published anything to say the mortgagor has no legal rights to enforce the signed contracts.

122.    Defendant would not make the argument that any other section of the Note and Mortgage is unenforceable by the parties.  To make the claim that the only paragraphs that provide no enforceable rights are those that affect the obligations of the Defendant under the Note and Mortgage is legally impossible to conceive.

123.    Congress intended the regulation to directly benefit the Plaintiff. This is made clear by its inclusion in Plaintiff's Note and Mortgage.

124.    Plaintiff, as the mortgagor, is the unmistakable focus of the regulation at 24 C.F.R. 203.604, and mortgagors as a whole are the class of persons intended to benefit from the regulation, not the agency.

125.    HUD crafted the regulation so as not to be vague or amorphous. Judicial enforcement is neither difficult nor impractical since enforcement calls for a simple dismissal of any complaint.

126.    HMFA has admitted it failed in its statutory obligation to meet the requirements at 24 C.F.R. 203.604. Failure was willful, intentional, and ongoing.

127.    HUD provides no comprehensive enforcement mechanism, nor any enforcement at all, thus indicating a private right to enforce. HUD only allows for fines and penalties _after_ the mortgagor has lost his or her home and even then the odds of HUD uncovering the violation are slim – due to the massiveness of the program.

128.    More important, HUD, as the federal agency charged with administering the Housing Act pursuant to the 203(b) program never provided a procedure by which mortgagors could complain to it about the failures of their lenders to comply with the pre-foreclosure regulations. The only option most mortgagors feel they have is to hire expensive counsel and fight the matter in court.

129.    This presents a vicious cycle because lenders such as HMFA know they can: (a) willfully violate the regulations and mortgagors rights without being found out by HUD, (b) willfully violate the regulations and mortgagors rights with knowledge that probably 95% of victims can't afford to hire a lawyer for a court case, (c) seemingly be assured the court will ignore any federal defenses to foreclosure, and (d) know that the deep cash pockets of a HMFA can outlast a low/middle income homeowner each and every time.

130.    There is no mechanism for the homeowner to be made whole after even the most egregious violations by mortgagees.   HUD's concern is only to get money back (perhaps trebled) that it paid on a false claim.

131.    HUD's total lack of remedial devices provided for by regulation are so deficient, it suffices to demonstrate congressional intent <u>not</u> to preclude the remedy of suits under § 1983.

132.    Had HUD incorporated the pre-foreclosure regulations in the mortgage documents, but yet intended that the mortgagor had no right to privately enforce the said regulation upon a willful violation of mortgagor rights and subsequent foreclosure by the lender, it would have said so.   It did not.

<u>First Cause of Action</u>
Plaintiff's Right to Have a
Face-to-Face Meeting With a Proper HMFA Representative
Prior to Acceleration and Foreclosure
Was Continuously Violated by Defendant and is Ongoing
42 U.S.C 1983 -  24 CFR 203.604

133.    Plaintiff realleges and hereby incorporates by reference all the

above allegations and other facts of this pleading as if set forth at length herein.

134.    42 USC 1983:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any citizen
> of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress, except that in
> any action brought against a judicial officer for an act or omission taken in
> such officer's judicial capacity, injunctive relief shall not be granted
> unless a declaratory decree was violated or declaratory relief was
> unavailable. For the purposes of this section, any Act of Congress
> applicable exclusively to the District of Columbia shall be considered to
> be a statute of the District of Columbia.

135.    "Person" for purposes of Plaintiff's Section 1983 claims is

Defendant Anthony L. Marchetta in his official capacity as HMFA Executive

Director.

136.    The relevant provisions under the regulations governing the

FHA at 24 C.F.R. 203.604 create a personal right to enforce under 42 U. S. C. §

1983.

137.    Plaintiff's claims are continuing violations.

138.    As a state actor, Defendant, acting under color of New Jersey

state foreclosure statutes, N.J.S.A. 2A:50-53 to 68, deprived Plaintiff of her rights to

save her home from foreclosure prior to acceleration and filing of any foreclosure

complaint via its violation of the federal regulations at 24 CFR 203.604

139.    The regulations at 24 CFR 203.604 unambiguously create a

federal right in Plaintiff to meet face-to-face with a representative of HMFA to

attempt to save her home from foreclosure prior to acceleration and filing of a foreclosure complaint.

140.    The regulations at 24 CFR 203.604 impose a binding obligation on Defendant to comply with the conditions precedent in the instant case since none of the exceptions apply.

141.    Plaintiff is the intended beneficiary of the regulation.

142.    Defendant's unlawful actions were done with the specific, willful intent to deprive Plaintiff of her home where no such right ever accrued.

143.    Defendant was and is deliberately indifferent to its obligations under the contract documents and to Plaintiff's rights under the contract documents.

144.    As a direct and proximate consequence of Defendant's violations, Plaintiff has suffered and continues to suffer significant stress and depression over the 7-year period this has continued, having to continue this endless legal fight against Defendant who knows and has admitted it never acquired the right to file a foreclosure complaint yet consistently tries to make Plaintiff a villain in its pleadings.  Should the court refrain from issuing an injunction to stay the state court proceedings pursuant to 28 U.S.C. 2283, Plaintiff will suffer the ultimate unlawful loss of her home.  Plaintiff only seeks prospective injunctive relief in this Cause of Action.

<u>Second Cause of Action</u>
Plaintiff's Right to Have a
Face-to-Face Meeting With a Proper HMFA Representative
Prior to Acceleration and Foreclosure
Was Continuously Violated by Defendant and is Ongoing
24 CFR 203.604 – Ex Parte Young

145.   Plaintiff realleges and hereby incorporates by reference all the above allegations and other facts of this pleading as if set forth at length herein.

146.   Plaintiff replicates the First Cause of Action against Defendant Marchetta in his official capacity except that Plaintiff pleads this count without leave of Section 1983 but based merely on violation of Plaintiff's rights under the regulation.

147.   Plaintiff pleads this count as an Ex Parte Young action directly under the federal regulation, 24 CFR 203.604, for violation of her rights to not be subjected to a foreclosure proceeding without first having the opportunity to meet face-to-face with a representative of HMFA to try to resolve the default.

148.   As a direct and proximate consequence of Defendant's violations, Plaintiff has suffered and continues to suffer significant stress and depression over the 7-year period this has continued, having to continue this endless legal fight against Defendant who knows and has admitted it never acquired the right to file a foreclosure complaint yet consistently tries to make Plaintiff a villain in its pleadings.   Should the court refrain from issuing an injunction to stay the state court proceedings pursuant to 28 U.S.C. 2283, Plaintiff will suffer the ultimate unlawful loss of her home.   Since the violation is ongoing, Plaintiff respectfully requests prospective injunctive and/or declaratory relief to end the continuing

violation of Plaintiff's rights necessary to vindicate the federal interest in the FHA program.

149.    Plaintiff seeks damages pursuant to 28 U.S.C 1343(3).

**Third Cause of Action**
Defendant Violated the Immunities Clause
of Both the Fourteenth Amendment
and Section 1983 in its Wrongful Attempt to
Seize Plaintiff's Home While in Violation of Federal Regulations
42 USC 1983 – 24 CFR 203.604 – Fourteenth Amendment

150.    Plaintiff realleges and hereby incorporates by reference all the above allegations and other facts of this pleading as if set forth at length herein.

151.    Under the Fourteenth Amendment, Plaintiff has the right to inherit, purchase, lease, sell, hold, and convey real and personal property to the full and equal benefit of all laws.  Owning and holding property is one of the privileges and immunities of national citizenship.

152.    Under the Fourteenth Amendment, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States…"

153.    42 U. S. C. § 1983 alludes to the deprivation of any rights, privileges, or "immunities" secured by the Constitution and laws of the United States.

154.    Pursuant to the "immunities" clause of Section 1983, Defendant was precluded from the foreclosure and the unlawful attempt to seize Plaintiff's home under color of New Jersey state foreclosure statutes when, as a state actor,

Defendant willfully violated the federal regulations at 24 C.F.R. 203.604 that precluded acceleration and foreclosure without first complying with the conditions precedent of the regulation.

155.    When Defendant twice filed foreclosure complaints and then reinstated the complaint in July 2017 without a federal right, Defendant continued on its course to seize Plaintiff's home and this violated the immunities clause of both the Fourteenth Amendment and Section 1983.

156.    Defendant's unlawful actions were done with the specific, willful intent to deprive Plaintiff of her home where HMFA admits no such right ever accrued.

157.    Defendant was and is deliberately indifferent to its obligations under the contract documents and to Plaintiff's rights under the contract documents as this violation has been ongoing..

158.    As a direct and proximate consequence of Defendant's violations, Plaintiff has suffered and continues to suffer significant stress and depression over the 7-year period this has continued, having to continue this legal fight against Defendant who knows and has admitted it never acquired the right to file a foreclosure complaint yet consistently tries to make Plaintiff a villain in its pleadings.  Plaintiff has also suffered through a barrage of legal costs over this period of time.  Should the court refrain from issuing an injunction to stay the state court proceedings pursuant to 28 U.S.C. 2283, Plaintiff's damages will amount to the ultimate unlawful loss of her home.

## Fourth Cause of Action
### Violation of Plaintiff's Due Process Rights
### 42 U. S. C. § 1983 - Fourteenth Amendment

159.   Plaintiff realleges and hereby incorporates by reference all the above allegations and other facts of this pleading as if set forth at length herein.

160.   Plaintiff brings this Cause of Action Against Defendant HMFA as a state actor.

161.   The Fourteenth Amendment explicitly prohibits states from violating an individual's rights of due process and equal protection.

162.   Defendant's actions are ongoing.

163.   Via Defendant's filing of the foreclosure complaints against Plaintiff pursuant to New Jersey statutes and the use of a mandatory state judicial foreclosure system, Plaintiff was deprived of due process since the state statutes are unconstitutional in the failure to provide for appointed counsel to insure a fair hearing for Plaintiff and a fair opportunity to defend.

164.   Defendant's mandatory use of the singular power of the courts perpetrate substantive unfairness as was obvious in the court's statement that Plaintiff's federal regulatory defenses would be ignored by the court because it would be unfair to HMFA, with no consideration for the subsequent unfairness to Plaintiff.  The state court became an arm of HMFA, there to assist HMFA in winning its case while denying equal protection and due process to Plaintiff.

165.   Furthermore, as Plaintiff is shielded from unlawful governmental action under the Fourteenth Amendment, HMFA was plainly aware

no right to seize Plaintiff home via state statute had accrued under the federal regulations. Plaintiff's rights were violated under the Fourteenth Amendment when state action in the form of a court judgment and order were sought to enforce its intent and goal to seize Plaintiff's home.

166.   The injury as a result of the lack of due process inflicted on Plaintiff is particular to the judicial process itself since the court presided over a state-created process that was and is fair only to HMFA, as so stated by the judge.

### Fifth Cause of Action
Violation of Plaintiff's Due Process Rights
42 U. S. C. § 1983 - Fifth Amendment

167.   Plaintiff realleges and hereby incorporates by reference all the above allegations and other facts of this pleading as if set forth at length herein.

168.   Plaintiff brings this Cause of Action Against Defendant HMFA as a state actor.

169.   The Fifth Amendment has an explicit requirement that the Federal Government not deprive individuals of "life, liberty, or property," without due process of the law and an implicit guarantee that each person receive equal protection of the laws.

170.   Via Defendant's filing of the foreclosure complaints against Plaintiff pursuant to New Jersey statutes and the use of a mandatory state judicial foreclosure system, Plaintiff was deprived of due process since the state statutes are unconstitutional in the failure to provide for appointed counsel to insure a fair hearing for Plaintiff and a fair opportunity to defend.

171. Defendant's mandatory use of the singular power of the courts perpetrate unfairness as was obvious in the court's statement that Plaintiff's federal regulatory defenses would be ignored by the court because it would be unfair to HMFA, with no consideration for the unfairness to Plaintiff. The state court became an arm of HMFA, there to assist HMFA in winning its case while denying equal protection and due process to Plaintiff.

172. The injury as a result of the lack of due process inflicted on Plaintiff is particular to the judicial process itself since the judge presided over a state-created process that was and is fair only to HMFA.

## Sixth Cause of Action
### CENLAR Violations of 12 CFR 1024.41

173. Plaintiff hereby realleges and incorporates by reference all the above allegations and other facts of this pleading as if set forth at length herein.

174. The mortgage loan that is the subject of this litigation is covered by the Real Estate Settlement Procedures Act (RESPA).

175. As the loan servicer of the mortgage loan that is the subject of this litigation, CENLAR is subject to the requirements of RESPA.

176. Plaintiff was prohibited from adding any germane claims against CENLAR as servicer as part of the controversy during the state case since despite the fact that the right to amend should be freely granted, on or around March 6, 2015, the state court denied Plaintiff (then defendant), the right to amend

her answer to add CENLAR. No legal explanation given by the court. (**See Exhibit F.**)

177.   12 CFR 1024.41(c)(1) requires a servicer in receipt of a loss mitigation application more than 37 days before a foreclosure sale to review the application to determine if it is complete.

178.   Plaintiff submitted a loss mitigation application to Defendant CENLAR, the servicer, via its attorney on September 29, 2015.

179.   Defendant was required to acknowledge receipt of Plaintiff's loan modification application to determine that the application was either complete or incomplete. 12 CFR 1024.41(b)(2)(B).

180.   If the application is incomplete, the servicer must identify the additional documents and information needed. 12 CFR 1024.41(b)(2)(B).

181.   Via letter dated September 30, 2015, Plaintiff was notified by Defendant that her loss mitigation application was received and that within 5 days Plaintiff would be notified if additional documentation was required.

182.   Defendant did not comply with the requirement at 12 CFR 1024.41(b)(2)(B) since in a letter dated November 10, 2015, Defendant falsely claimed that any loss mitigation was denied because Plaintiff failed to send additional information by the deadline. But Defendant had NEVER notified Plaintiff nor its own counsel (who was facilitating the mitigation) that any documents were missing. Plaintiff had no idea what was going on and neither did Defendant's counsel.

183.   Loss mitigation was denied by CENLAR without ever requesting additional information and without ever establishing any deadlines.

**WHEREFORE**, in addition to any demands at the end of this Complaint in Plaintiff's Prayer for Relief, Plaintiff demands judgment against Defendant in the amount of $2000 in damages for the violation, together with all Plaintiff's costs and any attorney fees incurred in this action, any compensatory damages as allowed by law, exemplary damages as allowed by law, and any such other relief as this Court may deem just and proper.

## Seventh Cause of Action
### CENLAR Violations of 12 CFR 1024.41

184.   Plaintiff hereby realleges and incorporates by reference all the above allegations and facts of this pleading as if set forth at length herein.

185.   When Defendant violated 12 CFR 1024.41 the first time (indicated in the above count) by denying Plaintiff's loss mitigation request without any notification that additional information was needed, Plaintiff submitted another loss mitigation application packet via CENLAR's counsel on or around November 20, 2015.

186.   In a letter dated November 30, 2015, Plaintiff received a letter from Defendant stating her loss mitigation application was complete, that no further documents were necessary, and that Plaintiff's application would be reviewed by an underwriter within 30 days of November 24, 2015.

187.    Defendant <u>AGAIN</u> violated 24 CFR 1024.41(c)(1)(i)(ii) when, to this very day, Defendant NEVER responded to Plaintiff's loss mitigation application at all.

188.    If Defendant denies Plaintiffs loss mitigation application, Defendant must include in the notice described by 12 CFR Section 1024.41(c)(1)(ii) the specific reason or reasons for the servicer's determination. 12 CFR Section 1024.41(d). Defendant did not provide any of these required notices to Plaintiff.

189.    Loan modifications denials are appealable per 12 CFR Section 1024.41(h). Defendant did not give any notice to Plaintiff that her loss mitigation application been denied, and therefore denying Plaintiff's right to appeal such denial.

190.    This behavior has been the behavior Plaintiff became accustomed to with CENLAR every time she tried to apply for loss mitigation. Upon information and belief, the Defendant servicer's strategy is to play the delay and/or deny game until the delinquency grows to the point where future loss mitigation is impossible and Defendant wins.  To disingenuously say to Plaintiff, or any homeowner, that loss mitigation can be attempted again, with an even greater delinquency, is just to move the chip on the boardgame to the next losing station.

191.    Defendant CENLAR has an egregious history of failure to comply with servicing requirements as required by 12 U.S.C. 2605 thus entitling Plaintiff to maximum statutory damages.  A short summary:

- Plaintiff sent written correspondence to CENLAR in the form of a letter dated March 2, 2010.  Plaintiff's letter met the requirements of a

Qualified Written Request ("QWR") as defined in the statute at 12 U.S.C. § 2605(e)(1)(B). This QWR was critical since it was here that Plaintiff was trying to determine the nature of the $1000+ fees added to her loan that was stopping her from reinstating her loan. CENLAR failed to acknowledge, investigate or respond to Plaintiff.

- Plaintiff sent another QWR to CENLAR in the form of a certified letter received by CENLAR on June 8, 2010. Plaintiff's letter met the requirements of a Qualified Written Request ("QWR") as defined in the statute at 12 U.S.C. § 2605(e)(1)(B). This QWR was also critical since again Plaintiff was trying to determine the nature of the $1000+ fees added to her loan that was stopping her from reinstating her loan. CENLAR failed to acknowledge, investigate or respond to Plaintiff <u>and foreclosed just one month later</u> without ever providing any explanation for why Plaintiff was being held hostage to pay suspicious fees to avoid the foreclosure – fees later found to be disallowed by law.

- Plaintiff sent written correspondence to CENLAR in the form of a certified letter dated March 28, 2011. Plaintiff's letter met the requirements of a Qualified Written Request ("QWR") as defined in the statute at 12 U.S.C. § 2605(e)(1)(B). CENLAR failed to acknowledge receipt of the correspondence, failed to make any corrections to Plaintiff's account as required at 12 U.S.C. § 2605(e)(2)(A), and failed to investigate the accuracy and legality of the fees that had been added to Plaintiff's account.

- Plaintiff sent written correspondence to CENLAR in the form of a certified letter dated May 25, 2011. Plaintiff's letter met the requirements of a Qualified Written Request ("QWR") as defined in the statute at 12 U.S.C. § 2605(e)(1)(B). Though CENLAR responded to the QWR, CENLAR failed to provide Plaintiff with copies of the requested invoices and failed to provide an explanation as to why the information was not available as per 12 U.S.C. § 2605(e)(2)(C).

- Plaintiff sent written correspondence to CENLAR in the form of a certified letter dated **June 15, 2011**. Plaintiff's letter met the requirements of a Qualified Written Request ("QWR") as defined in the statute at 12 U.S.C. § 2605(e)(1)(B). Though CENLAR responded to the QWR, CENLAR failed to provide Plaintiff with copies of the requested information and failed to provide an explanation as to why the information was not available as per 12 U.S.C. § 2605(e)(2)(C).

- Plaintiff sent the correspondence to CENLAR in the form of a certified letter dated **November 16, 2012**. Plaintiff's letter met the requirements of a QWR as defined in the statute at 12 U.S.C. § 2605(e)(1)(B). CENLAR failed to ever respond to the correspondence as required by 12 U.S.C. § 2605(e).

192. There were several more violations. But Plaintiff feels this is sufficient to show a pattern of almost egregious servicer behavior and intentional failure to comply with the servicing requirements pursuant to 12 U.S. Code § 2605.

193. Plaintiff has experienced considerable stress, depression, and migraine headaches over all the intentional deception from the servicer, and incurred expense in the applications for loss mitigation.

194. The provisions of 12 CFR Section 1024.41 are not merely a defense to foreclosure but are actionable under 12 USC 2605(f), which in turn allows for the recovery of actual damages, court costs, statutory damages of up to $2000, and attorney fees.

195. As mentioned above, pursuant to 12 USC 2605(f)(1)(B), CENLAR has engaged in a pattern of noncompliance with the servicing requirements, entitling Plaintiff to maximum damages.

**WHEREFORE**, in addition to any demands at the end of this Complaint in Plaintiff's Prayer for Relief, Plaintiff demands judgment against Defendant in the amount of $2000 in damages for the violation, together with all Plaintiff's costs and any attorney fees incurred in this action, any compensatory damages as allowed by law, exemplary damages as allowed by law, and any such other relief as this Court may deem just and proper.  .

## Seventh Count
### Violation of 18 U.S.C. § 371
### Conspiracy to Defraud the United States by
### Both HMFA and CENLAR

196.   Plaintiff hereby incorporates by reference all the above allegations and other facts of this pleading as if set forth at length herein.

197.   Neither the mortgagee nor the servicer satisfied the requirements of 24 CFR 203.604.prior to acceleration as foreclosure as required by federal regulations of the HUD program and admitted same.

198.   HMFA seeks to foreclose and collect on a false claim from HUD while knowingly not having satisfied the required conditions to collect on such a claim.

199.   On page 8 of the 2011 edition of HMFA's "POLICY AND PROCEDURES FOR PARTICIPATING LENDERS, "Compliance with FHA/VA/RHS/MI Requirements," the Guide states, "Lenders must comply with all requirements that FHA, VA, RHS and the Mortgage Insurer have for mortgages that they insure or guarantee. The lender must not take any action that might prevent us (i.e., HMFA) from recovering the full amount due under the VA or RHS guaranty, or the full claim under the FHA or MI insurance contract."

200.   And in HMFA's 2016 edition of the POLICY AND PROCEDURES GUIDE, page 5-3, it states, "However, please note that the following documentation is still required . . . . Compliance with any applicable Federal guidelines depending on the loan type (FHA, VA, USDA, Fannie Mae or Freddie Mac)."

201.    Thus, HMFA knows the significance of the HUD regulations and how noncompliance can cause nonpayment of claims from the federal insurance fund, but fully chooses to ignore the regulations under the pleasure of the state court as a state actor.

202.    Numerous times in Plaintiff's pleadings in the state court (her answer, opposition to summary judgment, cross motion for summary judgment, reconsideration of motion granting summary judgment, opposition to motion for reinstatement), Plaintiff pleaded to the court that HMFA had knowingly failed to comply with the federal regulations at 24 CFR 203.604 which prevented acceleration and foreclosure. HMFA's failure to accrue the right to foreclose was consistently ignored by the court every time.

203.    Though the state foreclosure proceedings were handled by CENLAR (the servicer), at every stage, per paragraph 64, HMFA was aware of the pleadings, was aware of its failure to be in compliance, and was aware no right to foreclose had accrued. Yet both CENLAR and HMFA continued an overt plan to ignore these regulations, allow the foreclosure to proceed, with the intent to submit a false claim to HUD by impairing, obstructing and defeating the lawful functions of HUD with or without the assistance of the state court.

204.    Per HUD regulations, even an assignment of the loan does not get around the violation.

205.  As Plaintiff is not an attorney, she admittedly is not certain she can bring this cause of action and will therefore also notice the issue to the HUD Inspector General.

## Prayer For Relief

**WHEREFORE**, as to all Counts, in addition to any Prayer for Relief notated above, Plaintiff requests that judgment be entered in its favor and against Defendant as follows:

a.  Damages pursuant to 28 U.S.C. 1343(3) - to be determined.

b.  Under Section 1983, Plaintiff request the Court grant prospective injunctive relief to stay the state court proceedings pursuant to 28 U.S.C. 2283 since such injunction would be necessary to aid in the federal court's jurisdiction over a res, and to effectuate a federal court judgment.  Such relief would also be authorized by Congress since Plaintiff's federal right and remedy, enforceable in the federal court, would be frustrated if the federal court were not empowered to enjoin the state court proceeding.

c.  That Plaintiff be awarded all reasonable fees and costs incurred since Defendant filed its first action in 2010, with interest, and for expenses incurred in the filing of this District Court complaint and defending against two foreclosure complaints where HMFA never acquired the right to file.

d. That Plaintiff be awarded attorney fees should Plaintiff retain counsel during these proceedings.

e. That this Court grant a declaratory judgment attesting to the fact that Defendant never acquired the right to accelerate and foreclose on Plaintiff's loan and that any pending or completed foreclosure sale would be void based on Defendant mortgagee's failure to obtain the power to foreclose, facts admitted by Defendant.

f. That this Court grant Plaintiff $15,000 in punitive damages from CENLAR for the severe emotional distress and depression she has experienced for several years due to Defendant's prolonged illegal foreclosure activity and servicing violations.

g. That this Court grant an Order relieving Plaintiff of any liability for any of Defendant's attorney fees and costs for any foreclosure-related action pursuant to Plaintiff's Mortgage at Paragraph 17.

h. That this Court grant declaratory and injunctive relief, on due process grounds, from continued enforcement of state statutes authorizing judgment or sale of plaintiff's property at issue herein.

i. That this Court shall order that any Order of relief to Plaintiff extend to any and all CENLAR/HMFA successors and assigns.

j. If before this federal case has concluded, Defendant fails to voluntarily dismiss the state case for violation of Plaintiff's rights under the Note and Mortgage, and Plaintiff's home is lost at sale, that this

Court grant nominal, compensatory and punitive damages to Plaintiff for her loss pursuant to 42 U.S.C. § 1983 and 28 U.S.C. 2283 since Defendant's continuing persistence to seize Plaintiff's home in the face of knowing her rights were violated would constitute a malicious, intentional deprivation of her rights.

k.  If this federal case concludes before the state case concludes, that this Court stay the federal case so that nominal, compensatory and punitive damages can be granted pursuant to 42 U.S.C. § 1983 and 28 U.S.C. 2283 if Plaintiff's home is lost at foreclosure sale in violation of her rights since Defendant's continuing persistence to seize Plaintiff's home in the face of knowing her rights were violated would constitute a malicious, intentional deprivation of her rights.

l.  Plaintiff respectfully requests such other and further relief as this Court may deem just and proper.

## Certification

The undersigned does hereby certify that the matter in controversy is not the subject of any other pending lawsuits, proceedings or arbitrations in existence or currently contemplated of which I am aware.  However, a case filed against Plaintiff by Defendant in 2013 was dismissed by the State court in 2016 and was dismissed when this Complaint was initially filed.  That case was later reinstated.

Plaintiff requests the Court take judicial notice of the Federal Registers and other official documents attached.

I certify under penalty of perjury that the foregoing is true and correct.  All documents attached to the herein Complaint are certified to be true and correct copies. This First Amended Complaint Executed on the date shown below.

## JURY TRIAL DEMANDED

First Amended Complaint
DATED:  October 3, 2017

Respectfully submitted,

_____
Carol Lloyd
60 Coachlight Dr
Sicklerville, NJ  08081
Defendant, Pro Se
Telephone:  (609) 619-0611
E-mail: ms.carol.lloyd@gmail.com